ALVIN A. SHANNON *v.* PATRICK M. MURPHY
AND EDWARD F. PEINE.

No. 4547.

APRIL 20, 1967.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY WIRTZ, J.

This is an appeal from the judgment of the First Circuit Court denying plaintiff Shannon the relief he sought in the form of the imposition of a constructive trust on 143 acres of land at Mountain View, Hawaii.

This controversy arose out of a real estate transaction in which defendants Murphy and Peine purchased from Mr. and Mrs. Chalmers of Hilo, Hawaii, 143 acres of land at Mountain View on the Island of Hawaii on March 31, 1958. A deed to this property from the Chalmers to the

defendants was executed on April 11, 1958. Defendants proceeded to subdivide the property under the subdivision name of "Hilo Acres." As a result of prior litigation between defendants Murphy and Peine, defendant Murphy conveyed his interest in the "Hilo Acres" property to defendant Peine on February 1, 1963. See *Peine* v. *Murphy*, 46 Haw. 233, 377 P.2d 708; Civil No. 4080, First Circuit Court.

Meanwhile, on December 9, 1959, plaintiff filed his present action against defendants. His amended complaint, filed on May 17, 1965, contained three counts founded on the same set of facts. Count one sought damages for breach of a joint venture agreement. Count two sought the establishment of a constructive trust on a theory of unjust enrichment and count three sought a constructive trust on the theory of fraud. At the pre-trial hearing on June 14, 1965, plaintiff waived the action for damages set forth in count one and elected to proceed with his case for the establishment of a constructive trust under counts two and three. The gravamen of his claim for relief is set forth in the same allegation contained in both counts, namely that:

"On or about March 28, 1958, Defendant Murphy falsely and fraudulently misrepresented to Plaintiff that he (Defendant Murphy) would attempt to purchase 'Hilo Acres' from the Chalmers at a purchase price of $10,000.00 for the joint venture consisting of Plaintiff and Defendants and requested and induced Plaintiff to refrain from accepting the offer of a 90-day option from the Chalmers to purchase 'Hilo Acres' for $12,500.00."

The relief sought by plaintiff was first that he be entitled to claim the entire "Hilo Acres" property including any and all proceeds from the sale of any portions thereof from the defendants or either of them upon payment of

the purchase price of $10,000 or such other sum as may be deemed equitable and just, and, alternatively, that plaintiff be entitled to a one-third interest in the "Hilo Acres" property upon such terms as may be deemed equitable and just.

Plaintiff's story was that he became interested in the land involved in early December of 1957 when he read a real estate ad in the Honolulu Star-Bulletin offering the property for sale at $15,000. He approached defendant Murphy, a licensed real estate broker as a friend of twelve years' standing (as well as a fellow member in several fraternal and social clubs, and a fellow joint venturer with defendant Murphy in two prior real estate transactions) and asked him to write on his letterhead to Chalmers on plaintiff's behalf for full particulars regarding the property described in the advertisement. Murphy did so write and turned over to Shannon the reply, together with the tax map enclosed therein. Shannon thereupon made a rough layout of the 143-acre property, subdividing it into one-acre lots and gave the subdivision the name "Hilo Acres." Shannon had a general familiarity with the locality and was enthusiastic about its development prospects. He took this layout, together with the letter and tax map received from Chalmers to Murphy in December of 1957 and endeavored to arouse some interest in Murphy toward the property. In January 1958, when Murphy began to show a little interest, Shannon talked about a "deal" together but defendant Murphy indicated that he had no available money to invest and that a third person would have to be brought in with some capital indicating that defendant Peine could be such a third party. Although Peine, upon seeing the "layout," indicated his feeling that the plan might work, nothing further occurred until mid-February 1958 when Shannon took it upon himself to write directly to Chalmers offering $100 for a 90-

day option to purchase the property at $12,500, one-third down and the balance payable in three years at no interest. Chalmers' reply to this offer was favorable and invited Shannon to come over and view the property. When Murphy was informed of this and that Shannon planned to go to Hilo to look the property over as he felt "this is a sweet deal," Murphy cautioned Shannon not to send any money for the offered option as he felt they could get the property for $10,000 cash. Shannon made two further rough layouts of the property, differing only in the amount of road construction that would be necessary to effect a subdivision. Around March 6, 1958, over a beer at The Flame (a restaurant and bar located across from Murphy's office) Shannon said that a joint venture between himself, Murphy and Peine was entered into on a one-third basis as to costs and profits. Shannon informed Murphy and Peine that he was going to Hilo on March 8 and Murphy again asked Shannon not to enter into the option with Chalmers as it would "kill the deal for $10,000 cash," which was the amount for which Murphy thought they could acquire the property.

On the following day, March 7th, Shannon met Peine at Z's Coffee Shop and went over the layouts with him. While Peine seemed interested he stated that he had to have a little more time. Shannon left for Hilo the following day, Saturday, March 8th, visiting the Chalmers and viewing the property. He returned on Sunday, March 9th, and before leaving told the Chalmers that they would hear from him "within three days."

On the next day, Monday, March 10th, Shannon, Murphy and Peine again discussed the property over a beer at The Flame but nothing was accomplished other than Murphy's insistence that the property could be acquired for $10,000 cash.

Between March 10th and March 26th, Murphy and

Shannon had several more conversations about the property, Peine being at that time away from Honolulu. On March 26th, Shannon received a letter from Mrs. Chalmers reminding him that they had expected to hear from him "within three days" and again confirming the arrangement about a 90-day option. On March 27th, Shannon told Murphy about this letter and informed him that he was going over the next day to close the deal and Murphy agreed to go with him. Murphy said he would handle the money particulars and asked Shannon not to give the Chalmers any option money because he could get the property for $10,000 cash for himself, Peine and Shannon. That afternoon Shannon met Peine at the Evergreen restaurant where they discussed the matter and he told Peine that he and Murphy were going over the next day to close the deal but Peine was still noncommittal. The following afternoon, Friday, March 28, Shannon waited for Murphy at the airport but Murphy failed to appear and so Shannon proceeded to Hilo. There he contacted the Chalmers and waited at the airport all day Saturday and Sunday to meet all incoming planes but neither Murphy nor Peine arrived. Without taking up the option Shannon returned to Honolulu on Sunday evening on the last flight out of Hilo. The next day, Monday, March 31st, Shannon unsuccessfully tried to contact Murphy and Peine.

Murphy and Peine both denied Shannon's version, as above set forth, insofar as it related to any business relations between themselves and Shannon, with Murphy especially denying that he had in any way induced Shannon not to take up the "option" offered him by the Chalmers. They testified that they did go to Hilo on Monday, March 31st, looking for property to invest in. They first looked at another property but then decided to purchase the Chalmers' tract and closed the deal on that

day for $10,000 cash with a deposit of $100.

The testimony of Mr. and Mrs. Chalmers and their correspondence with Shannon corroborates the arrangement they had between themselves and also corroborates Shannon's activities on his two trips to Hilo. The other documentary evidence principally relied on by plaintiff simply showed that the property was jointly purchased and deeded to Peine and Murphy.

This case might well be labeled as that of relative credibility as seen from the decision of the chancellor entered after the trial on July 19, 1965, as follows:

"Plaintiff here, after the close of the evidence, relied on the theories of fraud and constructive trust.

"Fraud must be clearly and satisfactorily established. *Peine* v. *Murphy,* 46 Haw. 233, at p. 238.

"The key fact that had to be established here in order to sustain a charge of fraud was that Murphy urged Shannon not to pay any money for an option because the property could be bought for $10,000 cash, and that Murphy did this so that either he or he and Peine might buy the property for themselves.

"Shannon testified to Murphy making such representations on several occasions. Murphy denied this. Thus an issue of credibility was presented.

"I have previously reviewed with Plaintiff's attorney at the time of the oral argument various reasons for suspecting the accuracy of Shannon's testimony and there is no need to set them forth at length here. They will appear to anyone reading Shannon's testimony at the trial and his earlier deposition. Suffice to say that despite reasons for also suspecting Murphy's testimony (e.g. his testimony in Civil 4080 that Shannon brought the ad in 2 or 3 days before Exhibit 1 was signed as compared with his testimony at the trial, and his testimony in Civil 4080 that Exhibit 1 was

made out at the site of the 143 acres as compared with his testimony at the trial), I am unable to state that Shannon has clearly and satisfactorily established his charge of fraud.

"Regarding the imposition of a constructive trust on Peine, who now holds title to the entire 143 acres, less the lots that have been sold, I am again faced with the difficulty of knowing how much of Shannon's testimony to believe. I do know that Shannon admitted on cross-examination that he had no definite deal with Peine as late as March 27, 1958. The only thing that I can really say is that Shannon has not established enough facts by a preponderance of the evidence for me to impose a constructive trust.

"Judgment will therefore be entered in favor of the Defendants with their costs."

Under two of his specifications of error[1] plaintiff attacks, as being "clearly erroneous," the findings that fraud was not sufficiently established and that there was insufficient evidence to warrant the imposition of a constructive trust. In view of the record in this case and the fact that it is apparent that the above set forth decision of the chancellor was predicated clearly on the credibility of the witnesses and the weight of the evidence, this court can hardly now say that these findings complained of were "clearly erroneous." An appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge. *Peine* v. *Murphy, supra,* 46 Haw. 233, 377 P.2d

---

[1] "2. The trial court erred in finding or concluding that 'I am unable to state that Shannon has clearly and satisfactorily established his charge of fraud' and in not finding and ruling that Plaintiff had clearly established his allegations of fraud.

"3. The trial court erred in finding or concluding that 'Shannon has not established enough facts by a preponderance of the evidence for me to impose a constructive trust' and in not finding and ruling that Plaintiff had clearly established his allegations of constructive trust."

708; *Edgar* v. *Travelers Insurance Co.*, 351 F.2d 690 (8th Cir. 1965); *United States* v. *Skolness*, 279 F.2d 350 (8th Cir. 1960).

Three of plaintiff's specifications of error[2] attack the adequacy of the court's findings of fact in his decision.

There is no question that under H.R.C.P., Rule 52(a), the trial court is required to make adequate findings of fact and conclusions of law in nonjury actions. 5 Moore's *Federal Practice* 2675; 2B Barron & Holtzoff, *Federal Practice & Procedure* 482. The criteria for findings of fact are that they should be "clear, specific and complete without unrealistic and uninformative generality on the one hand, and on the other without an unnecessary and unhelpful recital of non-essential details of evidence." 2B Barron & Holtzoff, *Federal Practice & Procedure* 503. The ultimate test as to the adequacy of a trial judge's findings is "whether they are sufficiently comprehensive and pertinent to the issue to form a basis for the decision and whether they are supported by the evidence." 5 Moore's *Federal Practice* 2656; see also, 2B Barron & Holtzoff, *Federal Practice & Procedure* 504.

Succinct though the findings of fact may be in the decision of the trial judge herein, they were still sufficient to determine the issues at hand. The detailed findings of fact that plaintiff would have desired the trial judge to have made, as set forth in his opening brief, were either dependent upon the credibility of plaintiff or were imma-

---

2 "1. The trial court erred in failing to find the facts completely, adequately or correctly in its ultrabrief Decision and resting its conclusions of law on incomplete, inadequate and erroneous findings.
\* \* \* \* \* \* \*
"4. The trial court erred in failing to find that a confidential or fiduciary relationship existed between Plaintiff and Murphy and, through Murphy, between Plaintiff and the joint venture consisting of Murphy and Peine.

"5. The trial court erred in failing to find that a joint venture existed between Murphy and his salesman, Peine, in the purchase, development and sale of the 'Hilo Acres' property."

terial and unnecessary for the determination of the issues before the court.

Specifically, plaintiff charges error in that no finding was made that "a confidential or fiduciary relationship existed between Plaintiff and Murphy and, through Murphy, between Plaintiff and the joint venture consisting of Murphy and Peine."[3] Also that the trial judge erred in not finding "that a joint venture existed between Murphy and his salesman, Peine, in the purchase, development and sale of the 'Hilo Acres' property."[4]

Findings that a confidential relationship existed between Shannon and Murphy which through Murphy's venture with Peine would have "affected and infected" (as plaintiff puts it in his brief) Peine, would be of no avail to Shannon for two reasons. Such findings would have been dependent for their significance upon belief of Shannon's story that Murphy, by virtue of his confidential relationship, in effect kidnapped "his baby" (the deal) for the benefit of himself and Peine. *Cf., All* v. *Prillaman,* 200 S.C. 279, 20 S.E.2d 741. Both of these findings become immaterial and unnecessary for the determination of the case in view of the chancellor's finding that Shannon's testimony was unworthy of belief.

The second reason that such findings would be of no avail to Shannon is that the record furnishes no guidelines which the chancellor could use as specifications for the "construction" of a trust. Shannon's assets could hardly be considered liquid; outside of some four hundred odd dollars in cash, they consisted of his mortgaged home and a one-third interest in Z's restaurant. He was scarcely in a position to accept the offer of an option to the property from the Chalmers as it readily appears that he would have been hard pressed to finance its purchase on the terms

---

[3] See footnote 2 above as to specification of error numbered 4.

[4] See footnote 2 above as to specification of error numbered 5.

offered. He sought to interest Murphy for the necessary financial assistance and when Murphy proved to be without available cash for the venture, he turned to Peine. It was Peine alone who was able to, and eventually did, finance the purchase of the property involved. But, as the chancellor pointed out in his decision, there was no "deal" between Shannon and Peine on Shannon's own admission on cross-examination. Even assuming presumptive fraud could be imputed to Peine through the chain of relationships, the wizardry of the chancellor could not enable him to equitably "slice the melon," as it were. Equity is powerless to erect a constructive trust on such an uncertain and shaky foundation. The terms under which one is supposed to hold property in trust for another must be established with reasonable clarity to enable the chancellor to impress a trust on the legal title so as to set up a beneficial interest therein. *Cf., Kuwahara* v. *Kuwahara,* 23 Haw. 273; *De Mello* v. *De Mello,* 34 Haw. 922; 54 Am. Jur., *Trusts,* §§ 618, 620.

At best plaintiff's contention can be resolved down to the following proposition elicited from counsel by questions from the bench, namely, that regardless of the existence of a definite deal, a constructive trust can be raised from the mere fact negotiations of the parties towards affecting a deal were in progress, in the course of which Shannon relied on Murphy to acquire the property under some kind of an arrangement where he would eventually be a joint venturer even if he didn't have a definite agreement at the time and that Murphy never did intend to formulate the deal expected by Shannon. Mere expectations cannot be realized even through the ingenuity of the chancellor. 54 Am. Jur., *Trusts,* § 223.

Plaintiff's remaining specification of error is:

"6. The trial court erred in excluding Plaintiff's Exhibit 9, the copy of the Initial Payment Receipt

and Contract dated February 6, 1958, by and between E. and A. Patterson, Seller, and Patrick Murphy, Edward Peine and Julie Peine, Purchaser."

Exhibit 9 dealt solely with the joint venture of Murphy, Peine and his wife with respect to an unrelated real estate transaction and had no bearing on the transaction before the court, other than it was to provide Peine with the necessary capital to finance the entire "Hilo Acres" deal. See *Peine* v. *Murphy, supra,* 46 Haw. 233, 377 P.2d 708. It is difficult to see the materiality or relevance of such evidence and we cannot say that the trial judge erred in excluding it in the absence of other credible evidence of fraud. *Cf., Concordia Fire Ins. Co.* v. *Wise,* 114 Okla. 254, 246 Pac. 595; *Keiter* v. *Miller,* 111 Pa. Super. 594, 170 Atl. 364; see, McCormick on *Evidence,* § 163, pp. 344-345.

Accordingly, the judgment appealed from is affirmed.

*Eichi Oki (George M. Takane,* of counsel) for plaintiff-appellant.

*Patrick F. Tuohy* for defendant-appellee, Patrick M. Murphy.

*Stuart M. Cowan (Greenstein & Cowan,* of counsel) for defendant-appellee, Edward F. Peine.