BARWICK PACIFIC CARPET COMPANY, a Nevada corporation, Plaintiff-Appellee, *v.* KAM HAWAII CONSTRUCTION, INC., a Hawaii corporation, Defendant-Appellant, and JAMES E. KAISER dba KAISER FLOOR COVERING COMPANY, Defendant

NO. 7142

CIVIL NO. 2789

JUNE 26, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* Defendant/General Contractor Kam Hawaii Construction, Inc. (hereinafter "contractor") appeals the trial court's

judgment against it for the cost of certain carpeting sent to its condominium project in Kihei, Maui (the Kamaole Beach Royale project), by Plaintiff-Appellee Barwick Pacific Carpet Company. Appellant essentially contends the trial court's conclusion of law that appellant is liable despite the absence of an "express oral or written contract" is not supported by its findings of fact. We find sufficient evidence to support the court's conclusion and affirm.

On September 19, 1974, contractor entered into a written agreement with James Kaiser, dba Kaiser Floor Covering Company (hereinafter "subcontractor"), that stated in pertinent part (1) subcontractor would completely furnish and install Appellee Barwick Pacific Carpet Company's "Elation" carpet and (2) contractor would make payment in the form of a joint check payable to subcontractor and Barwick Pacific Carpet Company (hereinafter "supplier") within 30 days of contractor's receipt of the carpet. Elation carpet was the basic carpet included in the price of all the condominium units. The joint check arrangement was required by supplier before it would supply subcontractor with the carpeting.

Thereafter, supplier billed contractor for the basic carpeting and sent all shipments to Maui in contractor's name.

During the months of October, November, and December, 1974, orders were placed for "upgraded" carpeting on behalf of condominium owners who wanted a more expensive brand of carpeting than Elation. Some of the orders were placed by Irene Matsuda, secretary to contractor's secretary Walter Witte, directly to supplier's offices.

After the orders were received, supplier had the "upgraded" carpet and carpet material cut to the ordered size and delivered to Young Brothers, Ltd., who shipped the carpeting to contractor as consignee. Because contractor did not request that the "upgraded" carpeting and carpet materials be shipped to a specific destination or by a specific carrier, supplier shipped the merchandise F.O.B. (freight on board) to the dock at Kahului, Maui.

After the shipment arrived in Maui, Young Brothers, Ltd. called the telephone number listed in the bill of lading or the telephone number listed in the telephone book under the consignee's name. Both telephone numbers were those of contractor's office. Nine different bills of lading for Young Brothers, Ltd. were signed in Kahului for nine separate shipments of "upgraded" carpet. Seven of the bills were signed by subcontractor; two of them were signed by

Jim Ball, an employee of contractor. The total price for the nine shipments of "upgraded" carpet and carpet material was $22,889.50.

Contractor paid for the basic carpeting by three joint checks to subcontractor and supplier dated September 27, 1974, October 15, 1974 and November 20, 1974. The last check covered the remaining cost of the basic carpet plus $1,676.30 of the amount due on the "upgraded" carpeting. Supplier never again received payment from contractor. Thus, at the time of suit, the outstanding balance for the "upgraded" carpeting was $21,213.20.

The trial court found that though the evidence did not show an "express oral or written contract between supplier and contractor for contractor to pay the 'upgraded' carpeting," contractor was liable to supplier because *inter alia:*

6. Under the circumstances, . . . [contractor] should have earlier communicated to . . . [supplier] that . . . [contractor] was denying liability for the payment for the carpeting.

. . . .

8. Under the circumstances, it was reasonable for . . . [supplier] to assume that . . . [contractor] was accepting responsibility for the payment of the "upgraded" carpeting.

. . . .

10. . . . [Contractor] is estopped from denying liability for the payment of the "upgraded" carpeting.

11. . . . [Supplier] is entitled to recover from . . . [contractor] the sum of $21,213.20, plus costs, interest at the rate of six percent (6%) per annum from January 31, 1975, to January 13, 1978, and reasonable attorney's fees.

Contractor contends that the findings of fact upon which the above conclusions are based are clearly erroneous, *i.e.*, are not supported by substantial evidence in the record. Specifically, it objects to the following:

25. The "upgraded" carpet and carpet materials were ordered by telephone from . . . [contractor's] office, but it is not clear whether it was being ordered for . . . [subcontractor] or for . . . [contractor].

. . . .

29. All of . . . [supplier's] invoices mentioned in the preceding paragraph were sent to and received by . . . [contractor].

. . . .

32. The shipments were accepted and transported to Kamaole Beach Royale, where the carpeting was installed.

. . . .

39. The total price of the "upgraded" carpet and carpet material sent to and used by . . . [contractor] amounts to $22,889.50.

40. Of the $22,889.50 due and owing to . . . [supplier], . . . [contractor] has made payment of only $1,676.30, leaving a balance of $21,213.20.[1]

With respect to Finding of Fact 25, the testimony of Irene Matsuda, secretary to Walter Witte, that she placed orders from contractor's offices, and Witte's testimony that subcontractor made calls from the offices of contractor, provide support for the court's finding. Findings of Fact 29 and 32 are supported by the testimony of John Kelley, vice president of Young Brothers, that they would regularly call the number on the bill of lading when shipments were received in Kahului, that that number was contractor's office number, that the bills and the invoices thereon were made out to contractor, and that either subcontractor or Jim Ball signed for the shipments when they were picked up in Kahului. Moreover, contractor's installation of the carpet was confirmed by its president, Adolph Mueller.

Contractor objects to Findings of Fact 39 and 40 on the grounds that the November 20, 1974 check was not meant to apply to a particular invoice or product. According to contractor, the payment was merely meant to reflect the percentage of the overall carpet installation that had been completed and should not be interpreted as recognition of a debt for upgraded carpeting. However, whether

---

[1] Contractor also objects to the court's finding that contractor did not notify supplier that subcontractor had disappeared from the condominium project sometime in early December, 1974. (Contractor hired another subcontractor to install the carpeting.) The issue of whether subcontractor's disappearance was communicated to supplier is not here addressed as it is irrelevant to contractor's liability for the "upgraded" carpeting.

contractor's payment was for individual carpeting shipments or a percentage of the carpeting job is immaterial. Contractor's undisputed payment of $1,676.30 in excess of the cost of the basic carpeting supports the court's finding that contractor recognized an obligation to pay for upgraded as well as the basic carpeting.

Contractor also argues that, notwithstanding the correctness of the findings of fact, the trial court erroneously based its conclusions of law upon a *quantum meruit* or quasi-contract theory rather than on the contract theory presented at trial. However, contractor's argument ignores, as we cannot do, other theories consistent with the trial court's conclusions of law. *Jahner v. Jacob,* 233 N.W.2d 791, 800 (N.D. S.Ct. 1975), *cert denied,* 423 U.S. 870, 96 S.Ct. 134, 46 L. Ed.2d 100 (1975); *Farmers Ins. Grp. v. Merryweather,* 214 N.W.2d 184 (Iowa S.Ct. 1974); *Pecker v. Pecker,* 240 So.2d 528 (Fla. App. Ct. 1970). *Cf. Wilson Enterprises v. Carrier Terminal Service, Inc.,* 2 Haw. App. 128, 627 P.2d 294 (1981); *Shannon v. Murphy,* 49 Haw. 661, 669, 426 P.2d 816, 820 (1967). The trial court's conclusion that the parties did not enter into an express written or oral contract for the ungraded carpeting is not inconsistent with the formation of a contract through the conduct of the parties.

> A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

*Hawaii Revised Statutes* § 490:2-204 (1976).

In this case, nine bills of lading for upgraded carpeting made out to contractor were signed by persons responding to phone calls from its office. No objection to the goods was communicated to supplier for nearly a year after the last shipment — during which time, the carpeting was installed in contractor's project. These circumstances, support the determination consistent with the trial court's conclusions of law that contractor's conduct gave rise to a contractual obligation to tender to supplier the outstanding balance for the upgraded carpeting.[2]

Moreover, contrary to contractor's contentions, contract was not the only cause of action before the trial court; nor are the trial court's

---

[2] Appellant's liability for the upgraded carpeting is not affected by the statute of frauds. HRS § 490:2-201(3)(c).

conclusions of law susceptible to explanation only on the theory of quasi-contract or *quantum meruit.*

The allegations of the complaint and the evidence introduced at trial presented a straightforward case of account stated. Thirteen invoices were sent to the contractor within 10 days of the date of each of 13 orders of "upgraded" carpeting. Each invoice bore contractor's name as debtor. Monthly statements of the balance owing for the "upgraded" carpeting were sent to contractor for October, November, and December, 1974. As noted, nine bills of lading made out to contractor were signed by persons responding to phone calls to its office. Yet, notwithstanding its receipt of each of these notifications of accounts due, contractor did not refuse payment of the outstanding $21,213.20 until October 11, 1975, nearly a year after its receipt of the last carpeting shipment.[3]

Given the business setting between the parties, contractor failed to object within a reasonable period of time. Consequently, it assented to the debt and created an account stated. *Burns Construction Company,* 163 Ind. App. 154, 322 N.E.2d 404 (1975). *Compare Stewart v. Spalding,* 23 Haw. 502, 521 (1916). *See generally,* 1 AM. JUR.2d *Accounts and Accounting* § 30 (1962).

Thus, the trial court's judgment was supported by its findings of fact and consistent with theories presented at trial.

Affirmed.

*Edward F. Mason (Mason, Yoshii & Scott* of counsel) for defendant-appellant.

*Gary B. K. T. Lee (Ukishima & Matsubara* of counsel) for plaintiff-appellee.

---

[3] Contractor's president, Adolph Mueller, testified that the invoices were discarded upon receipt. Contractor refused payment after it was contacted by an accounting firm engaged in an audit of supplier's accounts.