984 P.2d 1264

**Emma C. KIE, Plaintiff–Appellee,**

v.

**Dean T. McMAHEL, Defendant–Appellant.**

**No. 21808.**

Intermediate Court of Appeals of Hawai'i.

July 13, 1999.

motion for reconsideration.

Dean T. McMahel, defendant-appellant, on the briefs, pro se.

Shawna J. Sodersten, on the briefs, Kailua, for plaintiff-appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that in an action under Hawai'i Revised Statutes (HRS) chapter 586 (1993 and Supp.1997) relating to domestic abuse protective orders, a temporary restraining order (TRO) may only issue upon probable cause, and any TRO conditions which are incorporated into a protective order and the allegations underlying a request for a protective order must be proven by the petitioner by a preponderance of the evidence. While a respondent to such an action is required "to show cause" why the TRO conditions should not continue and a protective order issue, the burden on the respondent is to appear and respond to the allegations at a hearing therefor, not to carry the initial burden of proving the negative of the allegations. We conclude

that the Family Court of the First Circuit (the court) did not err in ruling that Plaintiff–Appellee Emma C. Kie (Plaintiff) had proven her HRS chapter 586 petition against Defendant–Appellant Dean T. McMahel (Defendant) by a preponderance of the evidence, although we caution against the court establishing Plaintiff's prima facie case by its own questions and allowing the admission of Plaintiff's direct case by the improper use of an offer of proof. We further hold that pursuant to HRS § 134–7(f) (Supp.1998),[1] all firearms and ammunition therefor in the possession or control of a person subject to a HRS chapter 586 order may be seized by the police, even if not owned by such person; the actual owners, however, may recover such items in an appropriate action or by other lawful means.

## I.

On July 10, 1998, Plaintiff filed a petition with the court for a domestic abuse[2] order for protection[3] against Defendant, her live-in boyfriend,[4] pursuant to HRS chapters 134 (1993 and Supp.1998) and 586.[5] In her petition, made under penalty of perjury, Plaintiff requested that a TRO issue against Defendant barring him from contacting, threatening, or physically abusing Plaintiff and her two children. Plaintiff also disclosed on the pre-printed petition form that Defendant "own[ed]" two shotguns, two "high powered rifles," and a pistol, and that "the firearm[s] may be used to threaten, injure[,] or abuse any person[.]"[6]

On the basis of the petition, the court issued a TRO which was served on Defendant on July 13, 1998. The TRO ordered Defendant, *inter alia,* to vacate Plaintiff's residence, to avoid any contact with Plaintiff or her children, and to turn over all firearms, ammunition, and permits and/or licenses therefor to the police for the duration of the TRO or the extension thereof. At the time the TRO was served on Defendant, police officers confiscated four firearms which had been described in Plaintiff's petition.

Under the TRO, Defendant was further ordered to appear at a hearing on July 23, 1998 "to show cause" why the restraining order "should not continue."[7] By this order, De-

---

1. The 1998 supplement to Hawaii Revised Statutes (HRS) chapter 134 (1993) contains two versions of HRS § 134–7, one "effective until June 29, 1999[,]" and one "effective June 30, 1999." Because this case commenced prior to June 29, 1999, when we cite or quote HRS § 134–7 (Supp.1998), we refer to that version in effect until June 29, 1999.

2. "Domestic abuse" is defined in HRS § 586–1 (1993) as:
   (1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault, extreme psychological abuse or malicious property damage between family or household members; or
   (2) Any act which would constitute an offense under section 709–906 [ (abuse of family and household members) ], or under part V [ (sexual offenses) ] or VI [ (child abuse) ] of chapter 707 committed against a minor family or household member by an adult family or household member.

3. Although the "cause of action" authorized under HRS chapter 586 (1993 and Supp.1997) is one for "a petition for an order of protection," HRS § 586–3(a) (1993), the petition was entitled, "Ex parte Petition for a Temporary Restraining Order for Protection and Statement." This is somewhat misleading since the temporary restraining order is ancillary to the primary request that an "order for protection" ultimately issue.

4. HRS chapter 586 applies to "family and household members," defined in HRS § 586–1 (Supp. 1997) as "spouses or reciprocal beneficiaries, former spouses or former reciprocal beneficiaries, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit." Plaintiff–Appellee Emma C. Kie (Plaintiff) and Defendant–Appellant Dean T. McMahel (Defendant) had co-habitated in Plaintiff's home for three years preceding service of the temporary restraining order.

5. Certain amendments were made to HRS chapter 586, effective July 15, 1998. Since the petition in this case was filed prior to that effective date, the 1997 version of HRS chapter 586 applies. *See* 1998 Haw. Sess. L. Act 172, § 10, at 648 (providing that the amendments "do[ ] not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date").

6. Plaintiff had also stated elsewhere in the petition that Defendant "may own ... weapon[s]" described as "bow and arrow, air rifle."

7. Although the statute implies that the temporary restraining order may "continue" and some or all of its terms incorporated into an order of protection, HRS § 586–5(b) (1993), *see infra* text at p. 442, 984 P.2d at p. 1268, the order of

fendant was notified that at the show cause hearing "the parties [would] be allowed to testify, call and examine witnesses[,] and give legal or factual reasons [for] why these orders should or should not be continued."

At the hearing, Plaintiff was represented by counsel and Defendant appeared pro se. Testimony was given by both parties. No other witnesses were called. Plaintiff's diary was the only other evidence introduced. In his testimony, Defendant denied all allegations of abuse made by Plaintiff.

On the basis of the evidence presented, the court determined that allegations made under parts IV–A(7) and –D of Plaintiff's petition had been proven. Those provisions stated, in relevant part:

> IV. The following domestic abuse happened:
>
> A. [X] The Defendant has physically harmed, injured or assaulted me by:
>
> . . .
>
> 7. [X] other: Physically blocked pathway to prevent me from entering the house.
>
> Last date: 6/25/98
>
> . . . .
>
> D. [X] The Defendant has subjected me to extreme psychological abuse. . . . [8]

After hearing all of the evidence presented, the court granted the petition as follows:

> This [c]ourt has heard the positions of the parties. This [c]ourt has heard the testimony of both of the witnesses.
>
> The burden of proof is upon the petitioner in this case to prove this matter by a preponderance of the evidence.
>
> The [c]ourt believes that Roman numeral 4A7 [sic], Roman numeral [sic] D has [sic] been proven. This [c]ourt will grant this restraining order for the duration requested.

protection is, in effect, an injunction and not a continuance of the temporary restraining order.

8. Plaintiff indicated the "last date" of such abuse was "4/10/98–7/10/98."

9. HRS § 586–4(a) (1993) provides, in part, as follows:

On July 23, 1998, the court entered an "Order for Protection" pursuant to HRS § 586–5.5 (Supp.1997) and effective for a period of three years. In entering this order, the court found that "Plaintiff has proven the material allegations of the petition and that . . . Defendant has failed to show cause why the order [for protection] should not issue and that a protective order is necessary to prevent domestic abuse or recurrence of abuse." The order essentially prohibited Defendant from having contact with Plaintiff and her children and, pertinent to this case, from possessing or controlling any firearms "during [its] duration."

## II.

On appeal, Defendant first contends that (1) his "right" to be considered "innocent until proven guilty" was violated by the proceedings, and (2) Plaintiff should have been required to produce police reports, photographs, testimony of other witnesses, or other proof to support her allegations.

### A.

With respect to Defendant's complaint about the ex parte nature of the TRO, we note the TRO was issued upon filing of the petition pursuant to HRS § 586–4(a) (1993).[9] Under HRS § 586–4(b), the family court is authorized to issue such a TRO only upon "probable cause to believe that a recent past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent." HRS § 586–5(a) (1993) further provides that a TRO "shall remain in effect at the discretion of the court, for a period not to exceed ninety days from the date the [TRO] is granted." However, HRS § 586–5(b) directs that

> [o]n the earliest date that the business of the court will permit, but no later than fifteen days from the date the [TRO] is granted, the court shall, after giving due

Upon petition to a family court judge, a temporary restraining order may be granted without notice to restrain either or both parties from contacting, threatening, or physically abusing each other[]. . . . The order may be granted to any person who, at the time such order is granted, is a family or household member as defined in section 586–1. . . .

notice to all parties, hold a hearing on the application requiring cause to be shown why the order should not continue.

■ The general purpose of a TRO is to "'prevent[ ] acts of abuse, or a recurrence of actual domestic abuse, and assure[s] a period of separation of the parties involved.'" *Coyle v. Compton,* 85 Hawai'i 197, 205, 940 P.2d 404, 412 (App.1997) (quoting HRS § 586–4(b)). Conceivably, however, a respondent[10] may move to lift or modify a TRO once it is entered.

Nothing in the statute prohibits a respondent from applying for such relief. Indeed, as indicated above, HRS § 586–5(a) reposes discretion in the court to determine the duration of a TRO, subject to a ninety-day limit. Because such discretion is vested in the court, the court possesses the power to vacate or otherwise modify the TRO. Such power must, of necessity, include the jurisdiction to entertain a motion by any party affected to vacate or modify the TRO. Defendant thus could have moved the court at any point to vacate or modify the TRO.

With respect to the evidentiary hearing for determining whether a protective order should issue, we acknowledge that HRS § 586–5(b) describes the hearing as one "requiring cause to be shown [by the respondent on] why the [TRO] should not continue." HRS § 586–5.5(a) also authorizes a protective order to issue if the court finds that "the respondent has failed to show cause why the [TRO] should not be continued[.]"

10. While the instant case refers to the parties as "Plaintiff" and "Defendant," respectively, HRS chapter 586 describes the parties to chapter 586 proceedings as "petitioner" and "respondent."

11. The following examination took place at the hearing on July 23, 1998:
    THE COURT: Okay. We'll proceed to trial. You received the documents where the [c]ourt has indicated how long you had to do your trial? You're aware of how we do trials?
    [DEFENDANT]: Yes.
    THE COURT: All right. Very well. We'll start at this time then.
    [Plaintiff], I show you a document entitled Ex Parte Petition of Temporary (unintelligible). Have you ever seen this paper before?
    [PLAINTIFF]: Yes.
    THE COURT: Do you recognize it?
    [PLAINTIFF]: Yes.

■ By their use of the words "show cause," HRS §§ 586–5(b) and –5.5(a) seemingly place on a respondent the burden of disproving allegations in the petition which have yet to be proven. While at that hearing the respondent must "show cause why" the protective order is not necessary, HRS § 586–5.5(a), the burden remains on the petitioner to prove the petitioner's underlying allegations by a preponderance of the evidence. *Coyle,* 85 Hawai'i at 206, 940 P.2d at 413. In *Coyle,* we held, construing HRS § 586–5.5 with HRS §§ 571–14 and –42 (the family court jurisdiction provisions), that the burden was on the petitioner to prove the allegations of the petition by a preponderance of the evidence. *Id.* We believe that this construction of HRS § 586–5.5(a) is consistent with the ultimate power given the court to issue protective orders, and meets any implicit due process objections raised in Defendant's claim that he was not considered "innocent until proven guilty." In our view, the order to a respondent to show cause is a direction from the court to appear at a hearing to answer and to respond to the petition's allegations, rather than a mandate which places the burden on the respondent of initially going forward with evidence to prove the negative of the allegations.

### B.

■ We observe that although Plaintiff was represented by counsel, the court conducted the direct examination of Plaintiff as to the elements of Plaintiff's case.[11] Further,

> THE COURT: And why do you recognize it?
> [PLAINTIFF]: It's—I filled it out.
> THE COURT: Your handwriting?
> [PLAINTIFF]: My handwriting.
> THE COURT: Oh, okay. Thank you.
> . . . .
> THE COURT: On the second page you made some allegations regarding alleged physical harm. In item seven, you put an X mark and you were physically blocked pathway to prevent you from entering house. You put 6/25/98. Did you write those words and put those [sic] date?
> [PLAINTIFF]: Yes, I did.
> THE COURT: Did this happen?
> [PLAINTIFF]: Yes.
> THE COURT: Down below in item D you allege extreme psychological abuse. Could you read the words to me, please?
> . . . .

Plaintiff's counsel did not ask Plaintiff questions on direct examination, except to confirm a lengthy "offer of proof" recited by counsel into the record:

> [PLAINTIFF'S COUNSEL] That concludes our offer of proof.
>
> THE COURT: Any other questions of your client?
>
> [PLAINTIFF'S COUNSEL]: No, Your Honor.
>
> THE COURT: Are you going to establish the offer of proof then?
>
> [Plaintiff], if called to testify, would that be your testimony which your counsel just said on record?
>
> [PLAINTIFF]: Yes.

We have affirmed the premise "that an impartial judge is required to insure a fair trial." *State v. Silva,* 78 Hawai'i 115, 117, 890 P.2d 702, 704 (App.1995) (citations omitted). While we recognize that a judge is entitled to question witnesses, we have stated that "there are limits to the extent to which a trial court may insert itself into the proceedings." *Id.* at 118, 890 P.2d at 705. Specifically, "the judge should not assume the role of an advocate for either party." *Id.* (internal quotation marks, citation, and brackets omitted). In fact, "[t]his caution is all the more important in a jury-waived trial where the court acts both as the judge of the law and as the judge of the facts." *Id.* (footnote omitted). We are concerned that a show cause hearing may be viewed as lacking in impartiality, if the court which decides the case elicits the testimony which establishes the petitioner's prima facie case.[12]

▉ We note, also, that the purpose of an offer of proof is to state " 'what the witness would say if he [or she] were permitted to answer the question and what he [or she] expects to prove by the answer to the question.' " *State v. Lessary,* 83 Hawai'i 280, 288, 925 P.2d 1104, 1112 (App.), *cert. denied,* 83

Hawai'i 545, 928 P.2d 39 (1996) (quoting 1 J. Strong, *McCormick on Evidence* § 51, at 195 (4th ed.1992) [hereinafter *McCormick on Evidence* ] ). "An offer of proof (1) 'permits the judge to consider further the claim for admissibility' and (2) creates a record to be used by the appellate court in determining 'whether the judge's ruling *sustaining an objection was proper.*' " *Id.* (quoting *McCormick on Evidence* § 51, at 195 (emphasis added)). Thus, an offer of proof is a procedural device to be used when the court has refused to admit certain evidence and the party making the offer either seeks to persuade the court to reverse its ruling, or to preserve the offered evidence for appellate review.

Since the court did not refuse evidence in support of Plaintiff's allegations, the offer of proof here was a misuse of that evidentiary device. We question whether the court may appropriately evaluate proof of a petition if the essential matters therefor are simply recited into the record. It would seem that a petitioner's own words and demeanor would be material to a court's proper evaluation of the credibility and the weight to be given the petitioner's evidence.[13]

Nevertheless, Defendant did not object to this procedure. Defendant did conduct cross-examination of Plaintiff, Plaintiff's counsel conducted redirect examination, Defendant testified on direct and redirect, and Plaintiff's counsel cross-examined Defendant. Conceivably, in these circumstances, the court could evaluate the credibility of the witnesses and weigh the evidence.

**C.**

▉ As to Defendant's claim that more proof was required to sustain the petition, it is plain that Defendant had the same opportunity as Plaintiff to convince the court that

---

> THE COURT: And what's the date these events took place?
>
> [PLAINTIFF]: April '98 through July '98.
>
> THE COURT: Okay. You believe you're in imminent danger from [Defendant]?
>
> [PLAINTIFF]: Yes.
>
> THE COURT: Thank you.

**12.** We do not believe that the family court of the first circuit (the court) here was partial to any party.

**13.** While we sustain the petition, we must express our general disapproval of the procedure followed because it raises questions as to the appearance of the proceeding's fairness, and as to the reliability of the court's ultimate decision.

**444**

the order for protection should or should not have been granted. The court heard versions of the events from both parties. The court applied the correct burden of proof of a preponderance of the evidence in arriving at its decision. We have said that "[p]reponderance of the evidence is defined as 'proof which leads the jury [or judge] to find that the existence of the contested fact is more probable than its nonexistence.'" *Coyle*, 85 Hawai'i at 202, 940 P.2d at 409–10 (quoting Commentary to HRE Rule 304) (internal quotation marks and citation omitted)).

▆▆▆▆ While Defendant challenges the court's ultimate decision, it is well established that in jury-waived cases, " '[a]n appellate court will not pass upon issues dependent upon [the] credibility of witnesses and the weight of the evidence; this is the province of the trial judge.'" *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 117, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (quoting *Shannon v. Murphy*, 49 Haw. 661, 667, 426 P.2d 816, 820 (1967)) (some internal quotation marks and citations omitted). Thus, " 'where the trial court's determinations of fact are largely dependent upon the resolution of conflicting testimony, great weight will be accorded its findings upon review.'" *Maui Ranch Owners Ass'n. v. Maui County*, 6 Haw.App. 414, 420, 724 P.2d 118, 122 (1986) (quoting *Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 219, 553 P.2d 733, 737 (1976)).[14] As this court has noted, "[u]nder a preponderance of the evidence standard, both 'parties share the risk of an erroneous verdict in roughly equal fashion.'" *Coyle*, 85 Hawai'i at 208, 940 P.2d at 415 (quoting *Masaki v. General Motors Corp.*, 71 Haw. 1, 14, 780 P.2d 566, 574, *reconsideration denied*, 71 Haw. 664,

833 P.2d 899 (1989) (citing *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1807–08, 60 L.Ed.2d 323 (1979))). After a review of the record, we believe there was sufficient evidence to support the court's determination that Plaintiff sustained her burden of proof. We conclude, then, that the court's order for protection must be sustained.

### III.

Secondly, Defendant contends "that his constitutional right to own and bear arms" was violated when police removed four firearms from his home on the day the TRO was served. Although Defendant refers to a constitutional right, the crux of his argument is that the police officers "were informed that not all firearms within the residence belong[ed] to [Defendant]," but the firearms were nevertheless "taken away."

HRS § 134–7(f) governs some of the issues raised by Defendant and provides, in part:

> (f) *No person who has been restrained pursuant to an order of any court, including an ex parte order as provided for herein, from contacting, threatening, or physically abusing any person, shall possess or control any firearm or ammunition therefor, so long as the protective order or any extension thereof is in effect* unless the order, for good cause shown, specifically permits the possession of a firearm and ammunition. The restraining order or order of protection shall specifically include a statement that possession or control of a firearm or ammunition by the person named in the order is prohibited. *Such person shall relinquish possession and control of any firearm and ammunition owned by that person*[15] *to the*

---

14. *But see State v. Gabrillo*, 10 Haw.App. 448, 458 n. 6, 877 P.2d 891, 895 n. 6 (1994) (stating that " '[i]t has been suggested that deference to the fact finder as the judge of the credibility of witnesses' or weight of the evidence should not 'preclude this [appellate] court from determining whether, as a matter of law, the evidence is such that reasonable [persons] should have a reasonable doubt as to an essential element of the crime for which the defendant was convicted'" (quoting *State v. Kekaualua*, 50 Haw. 130, 133–34, 433 P.2d 131, 133 (1967) (Levinson, J., concurring))).

15. There is an apparent inconsistency in the language of HRS § 134–7(f) between the prohibition against "possess[ing] or control[ling] *any* firearm or ammunition therefor" and the direction to "relinquish possession and control of any firearm and ammunition *owned* by that person." (Emphases added.) However, we construe the latter provision " 'in the context of the entire [section] and ... in a manner consistent with [the apparent] purpose[,]'" *Frank v. Hawaii Planing Mill Found.*, 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (quoting *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)), of HRS § 134–7(f) to prohibit a re-

*police department of the appropriate county for safekeeping for the duration of the order or extension thereof.* In the case of an ex parte order, the affidavit or statement under oath which forms the basis for the order shall contain a statement of the facts which support a finding that the person to be restrained owns, intends to obtain, or possesses a firearm, and that the firearm may be used to threaten, injure or abuse any person. The ex parte order shall be effective upon service pursuant to section 586–6.

(Emphases added.) Although not cited to by Defendant, the three-year order for protection also "prohibited [Defendant] from possessing or controlling any firearm, ammunition, firearm permit[,] or license for the duration of this order or extension thereof," pursuant to HRS § 134–7(f) and 18 USC § 922(g)(8).[16]

### A.

■ Defendant urges that the police officers should not have seized all of the firearms because the ownership of only one of the firearms was registered to him.

However, as set forth above, unless expressly permitted by the court, HRS § 134–7(f) unqualifiedly prohibits a person subject to a HRS chapter 586 order from possession and control of a firearm during the pendency of that order. We construe this prohibition as effective, irrespective of whether the respondent owned the firearms involved. In a criminal case brought under HRS § 134–7(b) (Supp.1997), we have said that "the term 'possess' ... means to (1) knowingly procure or receive the firearm or ammunition, or (2) be aware of one's own control over a firearm or ammunition for a sufficient period to have been able to terminate that possession." *State v. Auwae*, 89 Hawai'i 59, 60, 968 P.2d 1070, 1071 (App.1998). Because the violation

of HRS § 134–7(f) (Supp.1998) would, as in the case of a violation of HRS § 134–7(b), be charged as a crime, we interpret the term "possess" in HRS § 134–7(f) similarly.[17]

According to Plaintiff's petition, the firearms were all located in a "gun cabinet, outside [the] living room". Defendant told police the firearms did not belong to him but that "the owners would remove their firearms immediately." It may be reasonably inferred from this statement that Defendant knowingly received the firearms. Defendant's "possession" of all the firearms seized was therefore evident under the parameters set forth in the statute, and thus subjected the firearms to removal.

### B.

Defendant further urges that the three firearms which are not owned by him "should be returned" to their owners. As denoted in HRS § 134–7(f), the police department may seize and thereafter hold in safekeeping any firearms and ammunition found in the possession or control of a restrained person.

HRS § 134–7.5(d) (Supp.1998) allows for the return of seized firearms and ammunition under certain conditions:

(d) The firearm or ammunition shall be made available to the owner or person who was in lawful possession of the firearm or ammunition within seven working days after the seizure when:

(1) The firearm or ammunition are not retained for use as evidence;

(2) The firearm or ammunition are not retained because they are possessed illegally;

(3) The owner or person who has lawful possession of the firearm or ammunition is not restrained by an order of

---

strained person from having contact with firearms and ammunition therefor. We conclude the direction to relinquish firearms includes firearms which are possessed but not owned by such person.

**16.** 18 USC § 922(g)(8) is similar to HRS § 134–7(f) and bars a person who is subject to a court order which "restrains such person from harassing, stalking, or threatening an intimate partner

of such person" and which "was issued after a hearing of which [the person subject to the order] received actual notice" from possessing firearms.

**17.** Under HRS § 134–7(h), "[a]ny person violating ... [HRS § 134–7(f)] shall be guilty of a misdemeanor."

any court from possessing a firearm or ammunition; *and*

(4) No criminal charges are pending against the owner or person who has lawful possession of the firearm or ammunition when a restraining order has already issued.

(Emphasis added.) Thus, if the requirements of HRS § 134–7.5(d) are met, firearms and ammunition must be returned to their lawful owners or possessors. In the absence of facts falling within the purview of HRS § 134–7.5(d), we discern no express impediment in HRS chapters 134 or 586 to the actual owners [18] other than Defendant, from recovering their firearms and ammunition therefor by filing an appropriate action,[19] or by other lawful means.

## IV.

Accordingly, the court's July 23, 1998 order for protection is affirmed.

---

18. It is necessary to mention, however, that pursuant to HRS § 586–4(b), a temporary restraining order is binding "upon [the parties'] officers, agents, servants, employees, attorneys, or any other persons in active concert or participation with them." In this regard, we note but do not decide the effect of HRS § 586–5, which provides that "[t]he protective order may include other orders stated in the temporary restraining order and may provide such further relief as the court deems necessary...."

19. Insofar as specific firearms are described in an order for protection, we point out that HRS 586–9 (1993) provides that "[u]pon application, notice to all parties, and hearing, the court may modify the terms of an existing order for protection."