31 P.3d 915

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Christopher GRINDLING, Petitioner/Defendant–Appellant.**

No. 23472.

Supreme Court of Hawai'i.

Sept. 19, 2001.

Christopher Grindling, petitioner/defendant-appellant, pro se, on the writ.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that the provisions of an unexpired temporary restraining order (TRO) issued pursuant to Hawai'i Revised Statutes (HRS) § 586–4 (Supp.1999) remain in effect until modified or set aside. Inasmuch as the provisions of the TRO in this case were not modified or set aside, the factual basis for the TRO was not subject to collateral attack at the criminal trial charging Petitioner/Defendant Appellant Christopher Grindling (Petitioner) with violation of the TRO. The second circuit family court (the court),[1] therefore, correctly applied the TRO provision prohibiting Petitioner from contacting Priscilla Vladimir to the evidence before it. We thus affirm the affirmance by the Intermediate Court of Appeals (the ICA)[2] of the court's

---

1. The Honorable Douglas J. Sameshima presided over this matter.

2. The memorandum opinion of the ICA was decided by Chief Judge James S. Burns, and Associate Judges John S.W. Lim and Daniel R. Foley.

April 27, 2000 judgment of probation against Petitioner, but on the grounds set forth herein.

## I.

In relevant part, HRS § 586–4 provides as follows:

**Temporary restraining order.** (a) Upon petition to a family court judge, a temporary restraining order may be granted without notice to restrain either or both parties from contacting, threatening, or physically abusing each other.... The order may be granted to any person who, at the time such order is granted, is a family or household member as defined in section 586–1.... *The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:*

(1) Contacting, threatening, or physically abusing the petitioner;

. . . .

(b) The family court judge may issue the ex parte temporary restraining order orally, if the person being restrained is present in court. The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent. The order further shall state that the temporary restraining order is necessary for the purpose of preventing acts of abuse or preventing a recurrence of actual domestic abuse, and assuring a period of separation of the parties involved. The order shall describe in reasonable detail the act or acts sought to be restrained.... *The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:*

(1) Contacting, threatening, or physically abusing the petitioner;

. . . .

(c) When a temporary restraining order is granted pursuant to this chapter and the respondent or person to be restrained knows of the order, a knowing or intentional violation of the restraining order is a misdemeanor....

(Emphases added.)

Pursuant to HRS § 586–4, Vladimir obtained a TRO against Petitioner. The TRO was dated February 16, 2000, expired on May 16, 2000, and set a hearing date for a "show cause hearing" (OSC hearing) at which "the parties [would] be allowed to testify, call and examine witnesses[,] and give legal or factual reasons why these orders should or should not be continued to be in effect." The TRO was served upon Petitioner on February 16, 2000.

A March 2, 2000 complaint charged Petitioner with having violated the TRO on February 25, 2000. On April 26, 2000, his bench trial on the complaint was held. Vladimir testified for the defense, relating in pertinent part as follows:

Q. [PROSECUTING ATTORNEY] And there is a protective order [sic [3]] still in effect, correct?

A. [VLADIMIR] Yes.

Q. And that is a no-contact protective order.

A. Yes. From both sides of the party.

Q. Have you attempted to get that protective order amended?

A. No. My court date is a couple days from now, Friday, and I'll be doing that.

Q. So you want that court—you want it amended to have contact?

A. Yes.

Q. And who filed to amend it, you or [Petitioner]?

A. I will have to go about doing that.

Q. But you have a court date already, so somebody already—

A. No, I have a court date on Friday and I was going to speak to the judge and my attorney about that situation.

Q. So you can amend the protective order to have contact [with Petitioner]?

A. Yes.

Q. And that's because you want to maintain that relationship with him?

A. Because I want do [sic] undo the damage that I've done. The whole restraining order was in spite. Because—

**3.** A TRO authorized under HRS § 586–4 is to be distinguished from a "protective order." The latter is entered upon the termination of the TRO. *See* HRS §§ 586–5, 586–5.5 (Supp.1999).

On redirect examination, Vladimir testified as follows:

Q. [DEFENSE COUNSEL] Why did you file the order for protection?

A. Cuz he had sent me to jail for abuse.

Vladimir also testified as follows on redirect examination:

Q. So you didn't consider that language threatening or—

A. Oh, he wouldn't—

Q. —verbally abusive.

A. Physically hurt me. No.

. . . .

Q. He's never hit you, ever, right?

A. Right, he's never hit me.

Q. And your relationship has been such that you've hit him, right?

[PROSECUTING ATTORNEY]: Objection, [Y]our Honor.

[VLADIMIR]: Many times.

. . . .

Q. You've hit him in the past, right?

A. Yes, I've hit him, I've thrown things at him. I've broken things.

Q. And so you've actually been arrested for abuse.

A. Yes, I have.

The court convicted Petitioner of violating the TRO and entered a judgment of probation on April 27, 2000.

On appeal, the sole contention of Petitioner on plain error grounds [4] is that Respondent/Plaintiff–Appellee State of Hawai'i (the prosecution) "failed to prove *the existence of a lawful TRO* issued pursuant to HRS § 586–4, inasmuch as the trial record demonstrates that [Vladimir] filed the TRO against [Petitioner] for an improper purpose: '[t]he whole restraining order was in spite.' " (Emphasis added.)

This court assigned Petitioner's appeal from the court's April 27, 2000 judgment of

probation to the ICA, and on July 31, 2001, the ICA filed a memorandum opinion affirming the judgment. *See State v. Grindling,* No. 23472, mem. op. at 16 (Haw.Ct.App. Jul. 31, 2001) (hereinafter, "the ICA's opinion").[*] On August 22, 2001, Petitioner filed his application for writ of certiorari. On August 27, 2001, certiorari was granted.

## II.

The ICA affirmed the judgment of probation, apparently on the grounds that (1) "[b]ased on the signed statement contained in the ex parte petition [for TRO] that Vladimir signed under penalty of perjury, the family court properly relied on probable cause," ICA's opinion at 16, and (2) "Vladimir never testified at trial that the alleged abuse charges were false, but merely that she was motivated to expose the abuse out of 'spite' and in retaliation." ICA's opinion at 15.

In his pro se application for certiorari, Petitioner maintains that "the [ICA] erred in misstating evidence from [the] transcript. I could not find anywere [sic] in the transcript were [sic] ... Vladimir stated that she exposed the abuse for spite or any statement similar ..., thus rendering there [sic] decision based on evidence not in the record."

## III.

Under HRS § 586–4, the court may issue a TRO without notice upon a finding of "probable cause to believe that a past act or acts of abuse may be imminent." "[T]he purpose of the restraining order is to 'prevent[ ] acts of abuse, or a recurrence of actual domestic abuse, and assur[e] a period of separation of the parties involved.' " *Coyle v. Compton,* 85 Hawai'i 197, 205, 940 P.2d 404, 412 (App.1997) (quoting HRS § 586–4) (brackets in original).[5] The TRO is

---

**4.** Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellate court may recognize plain error when the error committed affects substantial rights of the defendant. *See State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997).

[*] The opinion is unpublished.

**5.** The restraining order may extend to the following acts:

(1) Contacting, threatening, or physically abusing the petitioner;

(2) Contacting, threatening, or physically abusing any person residing at the petitioner's residence;

(3) Telephoning the petitioner;

effective upon signing and filing, HRS § 586–5.6 (1993), and enforceable when the respondent is served with the order. *See* HRS § 586–4(c).[6] Violation of the TRO is a misdemeanor. HRS § 586–4(c).

The TRO remains in effect until: (1) the TRO terminates after a designated period not to exceed ninety days, HRS § 586–5(a) (Supp.1999); (2) a protective order is issued by the court at the OSC hearing, HRS § 586–5.5;[7] (3) the court dissolves or modifies the TRO at the OSC hearing; or (4) the court dissolves or modifies the TRO upon petition by either party after notice and a hearing. *See Kie v. McMahel,* 91 Hawaiʻi 438, 442, 984 P.2d 1264, 1268 (App.1999).

Petitioner maintains that Vladimir's subsequent testimony at trial on the criminal complaint demonstrates that in fact there was no actual abuse, and therefore, no probable cause to support the previously issued TRO. However, by its terms, the TRO was in effect from February 16, 2000 until May 16, 2000. No party moved to set it aside. Petitioner himself could have requested that the TRO be modified or rescinded. As stated in *Kie,*

> [n]othing in the statute prohibits a respondent from applying for [modification or dismissal of the TRO]. Indeed, ... HRS § 586–5(a) reposes discretion in the court to determine the duration of a TRO, subject to a ninety-day limit. Because such discretion is vested in the court, the court possesses the power to vacate or otherwise modify the TRO. Such power must, of necessity, include the jurisdiction to entertain a motion by any party affected to vacate or modify the TRO. [A respondent] thus could have moved the court at any point to vacate or modify the TRO.

> (4) Entering or visiting the petitioner's residence; or
> (5) Contacting, threatening, or physically abusing the petitioner at work.
> HRS 586–4(a).

**6.** Although a TRO issued ex parte under HRS § 586–4 becomes effective on the date of signing and filing, HRS § 586–5.6 (1993) (stating that "[t]he temporary restraining order shall be effective as of the date of signing and filing"); enforcement for violations of the order cannot be made until the respondent is aware of the order. *See* HRS 586–4(c) ("When a temporary restrain-

91 Hawaiʻi at 442, 984 P.2d at 1268. Although Vladimir announced at trial her intention to have the TRO amended, she took no action to do so from February 6, 2000, the date the TRO was issued, to April 26, 2000, the date of trial.

## IV.

◼ Petitioner's attempt at trial to challenge the factual basis for the TRO and on appeal to question its lawfulness on that basis constitutes a collateral attack on the TRO.

> A collateral attack ... is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree. As a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction. If it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack.

*First Hawaiian Bank v. Weeks,* 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989) (internal quotation marks, citations, and brackets omitted). As a general rule, a defendant may not collaterally attack the underlying factual basis of a court order prohibiting certain conduct constituting domestic abuse. In *State v. Mott,* 166 Vt. 188, 692 A.2d 360 (1997), the defendant violated an abuse protection order and appealed his conviction, alleging that the underlying order was void for lack of the opportunity to be heard, and that the court issuing the order had failed to make any findings in support of the order. *See id.* at 362. The Vermont Supreme Court noted that collateral attacks are generally prohibited, except for the limited purpose of challenging the jurisdiction of the issuing court over the defendant and the subject matter.

ing order is granted pursuant to this chapter and the respondent or person to be restrained knows of the order, violation of the restraining order is a misdemeanor."). This occurs when the order is served upon the respondent pursuant to HRS § 586–6 (Supp.1999). *See* HRS § 134–7(f) (Supp.1999) ("The ex parte order shall be effective upon service pursuant to section 586–6.").

**7.** The protective order issued at the OSC hearing is essentially an injunction, *see Kie v. McMahel,* 91 Hawaiʻi 438, 441, 984 P.2d 1264, 1267 (App. 1999), and may incorporate provisions of the preceding TRO.

*See id.* at 363. Thus, inasmuch as the defendant's claim regarding insufficient findings did not rise to the level of a jurisdictional defect, the court held that the defendant could not collaterally attack the abuse protection order on that basis. *See id.* at 366–67.

Other courts have prohibited collateral attacks premised on the factual basis of a court order in other contexts. In *State v. Cook,* 275 Minn. 571, 148 N.W.2d 368 (1967), the defendant appealed from a conviction for driving after his license was suspended. *See id.* at 369. The defendant contended that the initial order suspending his license was erroneous. *See id.* The court disallowed the collateral attack, stating, "Under wellsettled principles[,] we hold that until the order ... is modified, reversed, or by its terms expires, it is effective and enforceable if the commissioner [who issued the order] had jurisdiction over the defendant and the subject matter." *Id.* at 369–70. *See also Wong Kwai Tong v. Choy Yin,* 31 Haw. 603, 612 (1930) (Banks, J., dissenting) ("If the court has jurisdiction, ... [t]he judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached ... [and] is binding on the parties and on every other court unless reversed or annulled in a direct proceeding and is not open to collateral attack."); *In re Ahi's Estate,* 19 Haw. 232, 237 (1908) (determining that "[u]pon contempt proceedings for the disobedience of an order of court, valid and unrevoked, [the court] can consider no objections to that order which do not go to the jurisdiction of the court[,]" and concluding that "[i]f the order is erroneous in any particular[,] the remedy [to correct the error] is by appeal or by direct proceeding of some other

nature, not by disobedience"); *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980) (reaffirming the "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order" in construing a federal district court temporary restraining order); *Meyberg v. The Superior Court of Los Angeles County,* 19 Cal.2d 336, 121 P.2d 685, 687 (1942) (stating that "[t]here was no showing in the contempt proceeding that the court in the [underlying action] did not acquire jurisdiction of the subject matter and of the parties," and that "any defensive matter interposed to create factual issues is not a subject for investigation in the contempt proceeding, or in this [appeal of the contempt conviction]"); *State v. Patten,* 41 N.M. 395, 69 P.2d 931, 934 (1937) (stating that "[w]e are not called upon to say whether the court decided right or not in granting the injunction, but whether it became the duty of the court to decide either it should be granted or denied[,]" and further concluding that "[i]f such was its duty, then it had jurisdiction, and its decision, be it correct or erroneous, is the law of the case until it shall be reversed upon appeal; and can only be questioned upon a direct proceeding to review it, and not collaterally").

Petitioner challenges the underlying factual basis of the TRO. However, until it was modified, reversed, or expired according to its terms, the TRO was legally valid and not subject to such collateral attack in the criminal proceeding before the court.[8] According-

---

8. We do not reach the issue of whether the validity of an underlying order protecting against domestic abuse may be collaterally challenged on other grounds. *See United States v. Casciano,* 124 F.3d 106, 107, 112 (2d Cir.), *cert. denied,* 522 U.S. 1034, 118 S.Ct. 639, 139 L.Ed.2d 618 (1997) (concluding that a court order protecting against domestic abuse requires personal jurisdiction over a defendant and an opportunity to be heard in criminal prosecution for violation of 18 U.S.C. § 2262(a)(1), part of the federal Violence Against Women Act, P.L. 103–322, 108 Stat.1927 (1994) (prior to 2000 amendment) (VAWA)); *Gilbert v. State,* 765 P.2d 1208, 1209–11 (Okla.Crim.App. 1988) (holding that domestic abuse act not unconstitutionally vague so as to deny defendant due process in connection with protection orders; he had sufficient notice that kicking down

his wife's door, breaking out the rear window, and damaging the grill of her car would be violations of the issued protection orders); *Rohrscheib v. State,* 934 S.W.2d 909, 911 (Tex. App.1996) (holding that when the prosecution pled that defendant had violated a prior TRO which had since been amended, it was bound to prove the existence of the prior TRO in order to meet its burden); *State v. Marking,* 100 Wash. App. 506, 997 P.2d 461, *rev. denied,* 11 P.3d 825 (2000) (finding that a pretrial no-contact order was invalid because, contrary to the statute, it failed to inform appellant that consent is not a defense to a charge of violating the order, and as the existence of a valid no-contact order was an element of the offense, the evidence was insufficient to support appellant's conviction); *City of Seattle v. Edwards,* 87 Wash.App. 305, 941 P.2d

ly, we affirm the ICA's decision, but on the grounds set forth herein.

697, 699–701 (1997) (noting that the question of whether the order was still in effect at the time of the alleged violation made the order invalid). Such matters are not raised in this appeal.