**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000081**
**23-MAR-2022**
**08:13 AM**
**Dkt. 179 SO**

NO. CAAP-21-0000081

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

KQ, on behalf of KQ, a minor, Petitioner-Appellee, v.
RQ, Respondent-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DA NO. 20-1-002043)

SUMMARY DISPOSITION ORDER
(By:  Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

Self-represented Respondent-Appellant RQ (**Father**) appeals from the Family Court of the First Circuit's[1] (**Family Court**) October 12, 2020 Order for Protection (**Protective Order**), and January 15, 2021 Order Denying Respondent's Motion for Reconsideration.

On appeal, Father asserts that the Family Court erred in granting the Protective Order to Petitioner-Appellee KQ (**Mother**) on behalf of the parties' minor child (**Child**) and denying his Motion for Reconsideration, pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 59(e).  To that end, Father raises the following seven points of error:[2]

---

[1]  The Honorable Natasha R. Shaw presided.

[2]  Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 1(d) provides in part that "[a]ttorneys and pro se parties are deemed to be aware of, and are
                                                (continued...)

1.    The Family Court erred by "not appointing counsel on behalf of [Father] who is an indigent defendant";

2.    The Family Court erred by "refus[ing] a hearing or entry of [Father's] affirmative defense and counterclaim thru [sic] responsive pleadings";

3.    The Family Court erred "in failing to enforce [Father's] 1st Amendment Constitutional rights thereafter the court erred in concluding that extreme psychological abuse occurred in [Father's] home for the exercise of religious freedom";

4.    The Family Court erred "in failing to enforce against wrongful interference on the weekend of 09/19/2020 thru [sic] 09/21/2020 where [Mother's] acts of wrongful interference" violated a "06/10/2020 Interim Protection Order";

5.    The Family Court erred by "concluding that physical and/or child abuse occurred in [Father's] home in contradiction to [Hawaii Revised Statutes (**HRS**)] § 703-309";

6.    The Family Court erred by "recording a judgment of domestic abuse and stating '[Father] failed to show why the order for protection should not be had' and committed clear error [in its] . . . determination of credibility granted to [Mother] despite acts of contempt . . . and the credibility granted to [Child Welfare Services (**CWS**)] despite inconsistencies[.]"; and

7.    The Family Court erred by "failing to vacate a 10/12/2020 order for protection and erred in the entry of findings of fact and conclusions of law in support of domestic abuse where in the post-trial record, the court dismisses exculpatory evidence as harmless or irrelevant."

---

[2](...continued)
expected to comply with, all of the provisions of these rules."  Father's third amended opening brief, however, does not comply with HRAP Rule 28(b), and his arguments are addressed "to the extent they can reasonably be discerned" to promote equal access to justice for pro se litigants.  Wagner v. World Botanical Gardens, Inc., 126 Hawaiʻi 190, 193, 268 P.3d 443, 446 (App. 2011).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points as follows:

1. **Father Fails To Meet His Burden Of Showing That The Family Court Erred By Not Appointing Counsel Sua Sponte**

Father argues that the "Family Court erred by not appointing counsel on behalf of Respondent who is an indigent defendant in a custody hearing where the Plaintiff's allegations was prosecuted by her counsel[,]" and cites to State v. Loher, 140 Hawaiʻi 205, 398 P.3d 794 (2017).

In Loher, the Hawaii Supreme Court held that the trial court deprived the defendant of his "constitutional right to the assistance of counsel as provided by the Sixth Amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution." Id. at 220, 398 P.3d at 809. See also State v. Uchima, 147 Hawaiʻi 64, 74, 464 P.3d 852, 862 (2020) (explaining that an indigent defendant charged with an offense punishable by imprisonment has a state and federal constitutional right to have the assistance of counsel at every critical stage of the prosecution). Father, however, had not been charged with any offense punishable by imprisonment.

Instead, the Family Court issued a Protective Order pursuant to HRS § 586-5.5(a) (2018), which makes no mention of appointing counsel. Of note, HRS § 586-5(b) (2018) provides in

part that "[a]ll parties shall be present at the hearing and may be represented by counsel." HRS § 586-5(b). Thus, the plain language of HRS § 586-5 does not require the Family Court to appoint counsel for Father.

In matters involving the termination of parental rights or petitions for family supervision or foster custody by the Department of Human Services (**DHS**), however, indigent parents have a guaranteed right to court-appointed counsel under the due process clause in article I, section 5 of the Hawaiʻi Constitution and the Fourteenth Amendment of the United States Constitution. A parent's constitutionally protected liberty interest is at stake when parental rights are substantially affected, hence the right to court-appointed counsel. See In re T.M., 131 Hawaiʻi 419, 436, 319 P.3d 338, 355 (2014), holding modified by In re L.I., 149 Hawaiʻi 118, 122-23, 482 P.3d 1079, 1083-84 (2021).

The underlying proceeding in this case involves a domestic abuse protective order, not a termination of parental rights or petitions for family supervision or foster custody. Moreover, Father retained visitation, albeit supervised, during the Protective Order, and the record does not reflect that Father requested a court-appointed counsel. Father, thus, fails to meet his burden of showing that the Family Court erred by not appointing counsel *sua sponte*. See In re RGB, 123 Hawaiʻi 1, 18, 229 P.3d 1066, 1083 (2010).

4

2.     **The Family Court Heard Father's Notice and Motion And Motion to Dismiss**

Father argues that the Family Court erred by dismissing his "Notice & Motion for [HRCP] Rule 60(b)(3) Hearing/ Counterclaim for Contempt of Court & Tortious Interference with Custody/Visitation" (**Notice and Motion**) and "Motion to Dismiss Complaint" (**Motion to Dismiss**) without a hearing.

This argument is without merit because the court did, in fact, conduct a hearing on his motions.  On October 7, 2020, Mother's Petition for an Order for Protection on Behalf of Family or Household Member(s) (**Petition**) and Father's Notice and Motion and Motion to Dismiss came on for hearing before the Family Court.  Per the October 7, 2020 Family Court minutes, all parties appeared in-person and testimony occurred from 11:21-11:32 a.m. and 11:41-11:48 a.m.  After testimony, the Family Court denied without prejudice Father's Notice and Motion and Motion to Dismiss, and granted Father's request for a continuance to October 12, 2020 so that Father could prepare his exhibits for trial on Mother's Petition.

3.     **Father Fails To Show His Exercise Of Religion Was Substantially Burdened**

Father argues that the "failure of the Family Court to recognize and uphold religious freedom imposes unlawful rule of fundamental human rights . . . ."

To find unconstitutional infringement of Father's religious practices, we must examine if the activity "was motivated by and rooted in a legitimate and sincerely held religious belief," if the "free exercise of religion had been burdened," "the extent or impact of the regulation on the

parties' religious practices," and if there was a compelling interest to justify the burden. State v. Adler, 108 Hawaiʻi 169, 177, 118 P.3d 652, 660 (2005) (citation omitted). Notably, "the United States Supreme Court has long recognized a distinction between the freedom of individual belief, which is absolute, and the freedom of individual conduct, which is not absolute." Id. (internal quotation marks omitted).

Regarding Father's September 20, 2020 conduct, Mother alleged Father called the police and filed a false report, yelled at Child, hit Child with a back scratcher on her forearm hard enough to leave a mark, and hit Child in the head. In compliance with HRS § 586-5.5, the Family Court provided Father with an opportunity to show why the protective order should not be continued. The Family Court ultimately found Mother credible, and that she proved the material allegations in the Petition. This process cannot be said to substantially burden Father's exercise of religion. State v. Armitage, 132 Hawaiʻi 36, 62, 319 P.3d 1044, 1070 (2014) (requiring appellant to show a substantial burden on his practice of religion, and holding that requiring an application process to go to Kahoʻolawe "cannot be said to 'substantially burden' the exercise of religion").

**4.    The Family Court Did Not Abuse Its Discretion By Not Punishing Mother For Custodial Interference**

Father argues that the Family Court abused its discretion by not "punishing" Mother for custodial interference during the weekend of September 19, 2020 through September 21, 2020 "in direct violation of [the] 06/10/2020 interim protection order" pursuant to HRS § 587A-37 (2018).

6

HRS § 587A-37 provides that "[i]f a party fails to comply with the terms and conditions of an order issued by the court under this chapter, the court may apply the provisions of section 710-1077 and any other provisions available under the law." But, the "06/10/2020 interim protection order" to which Father refers was an order continuing the parties' motions for post-decree relief in the parties' divorce action in FC-D 10-1-2770. This order also provided that Father have certain "parenting time" with Child and that "Mother shall facilitate and encourage the child to spend time with Father." Thus, HRS § 587A-37 was not applicable because Mother did not violate any order issued under HRS chapter 587A.

Moreover, a person commits the offense of custodial interference if:

> The person, in the absence of a court order determining custody or visitation rights, intentionally or knowingly takes, detains, conceals, or entices away a minor with the intent to deprive another person or a public agency of their right to custody, and removes the minor from the State.

HRS § 707-726(1)(c) (2014). This appeal, however, involves a protective order, not a criminal charge against Mother for custodial interference.

And while the Protective Order pertained to Father's Child, and thus affected his custody, the Protective Order granted Father supervised visitations at Parents and Children Together (**PACT**) until the order expired. The Protective Order also stated that "[a]ll orders regarding custody and visitation are subject to modification in parties' divorce action."

7

In the parties' related divorce matter in FC-D 10-1-2770, Mother was ultimately awarded sole physical and legal custody of Child, subject to Father's right to visitation. In sum, the record does not show that Mother deprived Father of custody or removed Child from the State and, thus, the Family Court did not abuse its discretion by not "punishing" Mother for custodial interference.

**5. Father Fails To Meet His Burden Of Showing That The Family Court Erred By Concluding Mother Proved The Material Allegations In The Petition**

Father appears to argue that the Family Court improperly relied on "inflammatory and/or libelous testimony, false allegations and serious misrepresentation of material facts[,]" rather than his testimony that he exercised "reasonable parental discipline."

In <u>Hamilton ex rel. Lethem v. Lethem</u>, the Hawaiʻi Supreme Court held:

> (1) parents have a constitutional right to discipline children inhering in their liberty interest in the care, custody, and control of their children, under the due process clause, article 1, section 5 of the Hawaiʻi Constitution, (2) a parent may raise the right of parental discipline in a [HRS] § 586-5 show cause hearing in opposition to the continuation of a temporary restraining order (**TRO**) issued under HRS chapter 586 on allegations of domestic abuse, (3) in such circumstances trial courts shall consider whether the discipline is reasonably related to the purpose of safeguarding or promoting the welfare of the minor in determining whether the parent's conduct constituted abuse or proper discipline, and (4) generally a non-custodial parent retains the right to discipline a child when the child is under his or her supervision.

126 Hawaiʻi 294, 296, 270 P.3d 1024, 1026 (2012).

Here, the Family Court made findings that Father testified he "disciplined, not hit" Child. After considering this testimony, the Family Court nonetheless concluded that Mother proved the material allegations in her Petition based on

8

DHS's Report dated October 5, 2020 (**Report**), stipulated exhibits, and the credibility of Mother and DHS Social Worker Canionero (**SW Canionero**). The Family Court further concluded that Father failed to show good cause why the TRO should not be continued.

To the extent Father argues that the Family Court "relied upon inflammatory and/or libelous testimony, false allegations and serious misrepresentation" rather than his parental discipline testimony, we "will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence." Kie v. McMahel, 91 Hawaiʻi 438, 444, 984 P.2d 1264, 1270 (App. 1999) (citation, internal quotation marks, and brackets omitted).

Moreover, this Court cannot determine whether the Family Court considered the reasonableness of Father's actions because Father failed to provide transcripts of the October 7, 2020 and the October 12, 2020 hearings. See HRAP Rule 10(b)(1)(A); Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) (explaining that the "burden is upon appellant in an appeal to show error by reference to matters in the record, and he or she has the responsibility of providing an adequate transcript") (citation, internal quotation marks, and brackets omitted). Thus, Father failed to meet his burden of showing that the Family Court erred in concluding that Mother proved the allegations in the Petition and Father failed to show good cause why the TRO should not be continued.

6.  **Father Failed To Meet His Burden Of Showing There Was Insufficient Evidence**

Father appears to challenge the sufficiency of the evidence supporting the Family Court's conclusion that he did not show good cause why the TRO should not be continued.

Sufficient evidence exists when "the record contains 'substantial evidence' supporting the family court's determinations . . . ; the testimony of a single witness, if found by the trier of fact to have been credible, will suffice." In re Doe, 95 Hawaiʻi 183, 196, 20 P.3d 616, 629 (2001) (citations omitted).

Here, the Family Court held a hearing on the Petition and found the testimonies of Mother and SW Canionero credible. With Mother and SW Canionero's testimonies, there was sufficient evidence to support a conclusion that Mother proved the allegations in the Petition and Father did not show good cause why the TRO should not be continued. See Id.; Kie v. McMahel, 91 Hawaiʻi at 442, 984 P.2d at 1268 (interpreting HRS § 586-5.5(a) to mean, "[w]hile at [the] hearing the respondent must 'show cause why' the protective order is not necessary, [] the burden remains on the petitioner to prove the petitioner's underlying allegations by a preponderance of the evidence.") (citation omitted).

7.  **The Protective Order Will Not Be Set Aside Based on Conflicting Evidence**

Finally, Father appears to argue that the Family Court erred by issuing the Protective Order based, in part, on DHS's Report because it conflicted with the Notice of CWS Disposition dated November 25, 2020 (**Disposition**).

10

In the Report, DHS confirmed alleged physical abuse and threat of abuse by Father based on Child's "fearfulness of [Father's] methods of physical discipline and his aggression towards her causing [Child] to feel unsafe and vulnerable to his anger while in his care." In the Disposition, DHS indicated that the allegation of threatened physical harm or abuse was confirmed, and did not comment on physical harm or abuse. It is not entirely clear, however, that the Report and the Disposition speak to the same incident.

Assuming, *arguendo*, that the Report and Disposition were about the same incident and were in conflict, judgments "based on conflicting evidence will not be set aside where there is substantial evidence to support the trier of fact's findings." State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (citations, internal quotation marks, and brackets omitted). Again, the Family Court considered the Report, and the credibility of Mother's and SW Canionero's testimonies. As discussed above, Mother's and SW Canionero's testimonies provided sufficient evidence to support the Family Court's decision. Contradiction, if any, between the Report and Disposition will not be a basis for setting aside the Family Court's Order.

## CONCLUSION

In sum, the record on appeal does not indicate that Father presented new evidence or arguments that could not have been presented during the underlying proceeding. Thus, the Family Court did not abuse its discretion in denying Father's motion for reconsideration. See HRCP 59(e); Ass'n of Apartment

11

<u>Owners of Wailea Elua v. Wailea Resort Co., Ltd.</u>, 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002).

For the foregoing reasons, we affirm the Family Court's October 12, 2020 Order for Protection and January 15, 2021 Order Denying Respondent's Motion for Reconsideration.

DATED:  Honolulu, Hawaiʻi, March 23, 2022.

| On the briefs: | /s/ Keith K. Hiraoka<br>Presiding Judge |
|---|---|
| RQ,<br>Respondent-Appellant, pro se. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Sara M. Theodorous,<br>for Petitioner-Appellee. | /s/ Sonja M.P. McCullen<br>Associate Judge |